Filed 3/21/14

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| THE PEOPLE, | H039603 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1243927) |
| v. | |
| IGNACIO GARCIA, | |
| Defendant and Appellant. | |


Defendant Ignacio Garcia pleaded no contest to two counts of lewd conduct on a child under 14 (Pen. Code, § 288, subd. (a))[1] and was placed on probation. The trial court imposed the sex offender probation conditions mandated by section 1203.067, subdivision (b).[2] These probation conditions require him to successfully complete a sex offender management program, waive his "privilege against self-incrimination and participat[e] in polygraph examinations," and waive his psychotherapist-patient privilege "to enable communication between the sex offender management professional and supervising probation officer, pursuant to Section 290.09." (§ 1203.067, subd. (b).) He claims that the probation condition requiring him to waive his "privilege against self-incrimination" violates the Fifth Amendment, is

---

[1] Subsequent statutory references are to the Penal Code unless otherwise specified.

[2] Subsequent subdivision references are to section 1203.067 unless otherwise specified.

unconstitutionally overbroad, and is unreasonable. Defendant asserts that the probation condition requiring him to waive his psychotherapist-patient privilege violates his constitutional right to privacy, is unconstitutionally overbroad, and is unreasonable. We reject his contentions and affirm the trial court's order.

## I. Background

Defendant, who was 16 years old at the time, repeatedly forced his nine-year-old male cousin to orally copulate him. Defendant threatened his cousin, punched him in the arm, offered him money, and asked him to watch a pornographic film with defendant. Defendant was charged by complaint with six counts of forcible lewd conduct (§ 288, subd. (b)(1)). The complaint also alleged that he was ineligible for probation under section 1203.066, subdivision (a)(1).

Although he initially denied the allegations, defendant later admitted that the oral copulations had occurred and expressed remorse. The prosecutor amended two of the counts to charge nonforcible lewd conduct and entered into a plea agreement with defendant. Under the plea agreement, defendant would plead no contest to those two counts in exchange for dismissal of the remaining counts, limiting his exposure to a minimum of one year in jail and a maximum of three years in prison, and a section 288.1 report, which is a prerequisite to a grant of probation. Defendant entered the no contest pleas. The section 288.1 report concluded that defendant "does not pose a substantial risk of future sexual offending."

The probation report recommended a grant of probation. It also recommended that the court impose the statutorily mandated probation conditions set forth in section 1203.067. Defendant objected to the imposition of the probation conditions required by subdivisions (b)(3) and (b)(4). He contended that these conditions violated the

2

Fifth Amendment and his constitutional right to privacy, were unconstitutionally vague and overbroad, and were unreasonable.[3]

At the sentencing hearing, the court noted defendant's objections, but it concluded that it lacked any discretion under the statute and therefore was "compelled" to impose these conditions. The court suspended imposition of sentence and placed defendant on probation for three years with numerous conditions including a year in jail, which was deemed served. Three probation conditions were imposed under section 1203.067: (1) "Pursuant to Section 1203.067(b)(2) of the Penal Code, as a condition of release from . . . formal probation, the defendant shall enter, participate [in], [and] complete an approved management program required by that section, following the standards developed pursuant to Section 9003 of the Penal Code, for a period of not less than one year, up to the entire term of probation, as determined by the management professional in consultation with the probation officer and as approved by the Court"; (2) "[Y]ou are to waive any privilege against self-incrimination and participate in polygraph examinations, which shall be part of the offender management program pursuant to Section 1203.067(b)(3) of the Penal Code"; and (3) "You shall waive any psychotherapist/patient privilege to enable communication between the offender management professional and the probation officer pursuant to Section 1203.067(b)(4) and Section 290.09 of the Penal Code." Defendant stated that he understood and accepted these conditions of probation. He timely filed a notice of appeal.

---

[3] Defendant also claimed below that section 1203.067, subdivision (b) was an ex post facto law as to him because it was enacted after he committed his offenses. These provisions of section 1203.067 took effect in September 2010 (Stats. 2010, ch. 219); defendant's offenses occurred in 2011. Defendant no longer claims that there was an ex post facto problem in applying this statute to him.

## II. Discussion

Section 1203.067, subdivision (b) provides: "On or after July 1, 2012, the terms of probation for persons placed on formal probation for an offense that requires registration pursuant to Sections 290 to 290.023, inclusive, shall include all of the following: [¶] . . . [¶] (2) Persons placed on formal probation on or after July 1, 2012, shall successfully complete a sex offender management program, following the standards developed pursuant to Section 9003, as a condition of release from probation. The length of the period in the program shall be not less than one year, up to the entire period of probation, as determined by the certified sex offender management professional in consultation with the probation officer and as approved by the court. [¶] (3) Waiver of any privilege against self-incrimination and participation in polygraph examinations, which shall be part of the sex offender management program. [¶] (4) Waiver of any psychotherapist-patient privilege to enable communication between the sex offender management professional and supervising probation officer, pursuant to Section 290.09."[4] (§ 1203.067, subd. (b).)

### A. Subdivision (b)(3) Condition

Defendant puts forth three challenges to the subdivision (b)(3) condition's requirement that there be a "[w]aiver of any privilege against self-incrimination." He claims that the condition itself violates the Fifth Amendment, that the condition is unconstitutionally overbroad, and that the condition is unreasonable.

---

[4] These provisions of section 1203.067 were added to the statute in 2010 and took effect in September 2010. (Stats. 2010, ch. 219.) Section 1203.067 was amended in 2011 to replace "formal supervised probation" with "formal probation." (Stats. 2011, ch. 357.) Since the language of the statute is otherwise unchanged, we refer to the current version of the statute.

4

## 1. Fifth Amendment Challenge

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." Defendant claims that the subdivision (b)(3) probation condition violates the Fifth Amendment because, "[i]f the prospective probationer refuses to waive his privilege against self-incrimination, he will be denied probation and sentenced to state prison on a felony or to county jail on a misdemeanor, or face a violation of probation."[5] We reject his contention.

The Fifth Amendment does not prohibit the State from requiring a prospective probationer to choose between accepting this waiver and going to prison. This is true because the subdivision (b)(3) probation condition does not *itself* compel a probationer to be a witness against himself in *a criminal proceeding*. This condition requires only that the probationer provide *full disclosures* in connection with the sex offender management program.[6] Such disclosures are necessary to the success of the program. (See *post*, at pp. 17-19.) The waiver provision is critical because it prevents a probationer from refusing to provide such disclosures on self-incrimination grounds.

---

[5]     He makes this claim independent of his contention that the condition is unconstitutionally overbroad.

[6]     The parties view subdivision (b)(3)'s self-incrimination waiver as applying only in the context of the sex offender management program. We agree that this is the only logical reading of the statute. This probation condition does not purport to prohibit a probationer from exercising his or her privilege against self-incrimination outside of the sex offender management program. "[I]f reasonably possible the courts must construe a statute to avoid doubts as to its constitutionality." (*People v. Smith* (1983) 34 Cal.3d 251, 259.) As there could be doubts about the constitutionality of imposing a probation condition requiring an unlimited waiver of a probationer's privilege against self-incrimination, we construe the statute's waiver provision, consistent with the language of the entire statute, to be limited to the probationer's participation in the sex offender management program.

Defendant puts misplaced reliance on the United States Supreme Court's decision in *Minnesota v. Murphy* (1984) 465 U.S. 420 (*Murphy*). Murphy had been placed on probation for a sexual offense. His probation terms required him to participate in a sex offender treatment program and to be "truthful with the probation officer 'in all matters.'" (*Murphy*, at p. 422.) A counselor in the treatment program told the probation officer that Murphy had admitted an unrelated rape and murder. (*Murphy*, at p. 423.) The probation officer confronted Murphy about these admissions. (*Murphy*, at pp. 423-424.) Murphy again admitted the rape and murder. (*Murphy*, at p. 424.) Murphy was charged with murder, and he sought to suppress his admissions to the probation officer on Fifth Amendment grounds. (*Murphy*, at pp. 424-425.) The Minnesota Supreme Court held that, because Murphy was required to respond truthfully to the probation officer, she was required to inform him of his Fifth Amendment rights before questioning him, and her failure to do so merited suppression of his admissions. (*Murphy*, at p. 425.)

The United States Supreme Court granted certiorari to decide "whether a statement made by a probationer to his probation officer without prior warnings is admissible in a subsequent criminal proceeding." (*Murphy*, *supra*, 465 U.S. at p. 425.) The "general rule" is that the Fifth Amendment privilege against self-incrimination is not "self-executing." (*Murphy*, at p. 434.) A privilege that is not "self-executing" applies only where it has been invoked. (*Ibid*.) Murphy had not invoked the privilege because he did not "assert the privilege rather than answer" the probation officer's questions. (*Murphy*, at p. 429.) The court rejected Murphy's claim that his obligation under the terms of his probation to truthfully answer his probation officer's questions alone converted his "otherwise voluntary" responses into compelled statements. (*Murphy*, at p. 427.) Analogizing Murphy's situation to that of a subpoenaed witness who testifies on pain of contempt, the court observed that "[t]he answers of such a witness to questions put to him are not compelled within the meaning of the Fifth

6

Amendment unless the witness is required to answer over his valid claim of the privilege." (*Ibid.*) "If he asserts the privilege, he 'may not be required to answer a question if there is some rational basis for believing that it will incriminate him, at least without *at that time* being assured that neither it nor its fruits may be used against him' in a subsequent criminal proceeding. [Citation.] But if he chooses to answer, his choice is considered to be voluntary since he was free to claim the privilege and would suffer no penalty as the result of his decision to do so." (*Murphy*, at p. 429.)

The United States Supreme Court also considered in *Murphy* the applicability of the "penalty exception" to the general rule that the Fifth Amendment is not "self-executing." The penalty exception applies where the State not only compelled the person's statements but also "sought to induce him to forgo the Fifth Amendment privilege by threatening to impose economic or other sanctions 'capable of forcing the self-incrimination which the Amendment forbids.'" (*Murphy*, *supra*, 465 U.S. at p. 434.) "A State may require a probationer to appear and discuss matters that affect his probationary status; such a requirement, without more, does not give rise to a self-executing privilege. The result may be different if the questions put to the probationer, however relevant to his probationary status, call for answers that would incriminate him in a pending or later criminal prosecution. There is thus a substantial basis in our cases for concluding that if the State, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution." (*Murphy*, at p. 435.) Yet even in the "classic penalty situation," the probationer's compelled statements would still be admissible in a probation revocation proceeding, as that is not a criminal proceeding and the Fifth Amendment is therefore inapplicable. (*Murphy*, at p. 435 & fn. 7.) Murphy's statements did not fall within the penalty exception. "On its face, Murphy's probation

7

condition proscribed only false statements; it said nothing about his freedom to decline to answer particular questions and certainly contained no suggestion that his probation was conditional on his waiving his Fifth Amendment privilege with respect to further criminal prosecution." (*Murphy*, at p. 437.) Hence, his statements to the probation officer were admissible against him in a criminal prosecution.

Defendant also relies on the Ninth Circuit's decision in *United States v. Saechao* (9th Cir. 2005) 418 F.3d 1073 (*Saechao*). In *Saechao*, the probationer was subject to a condition that he "'promptly and truthfully answer all reasonable inquiries' from the [probation] officer or face revocation of his probation." (*Saechao*, at p. 1075.) The probation officer asked the probationer if he had a gun, and the probationer admitted that he had a hunting rifle. The probationer was charged with being a felon in possession of a firearm, and he sought to suppress the fruits of his admission on Fifth Amendment grounds. The district court granted his motion, and the Ninth Circuit found that this was a "'classic penalty situation'" because, unlike in *Murphy*, the probationer was required by the probation condition to "'answer all . . . inquiries.'" The court upheld the suppression order. (*Saechao*, at pp. 1075-1079.)

Neither *Murphy* nor *Saechao* advances defendant's contention. Those cases were concerned with the *admissibility* of a defendant's statements *in a criminal prosecution*. No such contention is at issue here. Defendant has not made any statements, and no one is seeking to introduce any statements against him in a criminal prosecution. Defendant relies on the Arizona Supreme Court's decision in *State v. Eccles* (Ariz. 1994) 179 Ariz. 226 (*Eccles*) to support his claim that *Murphy* and *Saechao* apply here. In *Eccles*, the trial court had imposed as a condition of probation that the defendant "waive any and all rights against [self-incrimination]." (*Eccles*, at p. 227.) The probationer challenged the probation condition itself as violative of the Fifth Amendment, and the Arizona Supreme Court agreed. It reasoned: "Not only is

8

the state prohibited from revoking probation for a legitimate invocation of the privilege against self-incrimination, we perceive the import of the *Murphy* decision as being that the state is also prohibited from making waiver of the privilege a term of probation." (*Eccles*, at p. 228.) "The state may not force defendant to choose between incriminating himself and losing his probationary status by remaining silent. The fact that defendant has not yet been presented with the dilemma of either incriminating himself or jeopardizing his probation does not affect our decision." (*Eccles*, at p. 228.)

If we accepted *Eccles*, it would support defendant's claim. The Attorney General, on the other hand, relying on *Maldonado v. Superior Court* (2012) 53 Cal.4th 1112, 1120 (*Maldonado*), contends that defendant cannot establish that the probation condition itself violated the Fifth Amendment because a Fifth Amendment violation occurs only when a person's compelled statement is used in a criminal proceeding against that person. *Maldonado* involved a pretrial court-ordered mental examination of the defendant by prosecution experts. While the defendant conceded that the prosecution was entitled to have the examination conducted, he claimed that the prosecution had no right to disclosure of his statements to the examiners until he actually presented his mental state defense at trial. The prosecution claimed that it was entitled to immediate access to the mental examination.

The California Supreme Court rejected the defendant's claim that the Fifth Amendment provided "a guarantee against officially compelled *disclosure* of potentially self-incriminating information." (*Maldonado*, *supra*, 53 Cal.4th at p. 1127.) The *Maldonado* court based its holding on the rule that the Fifth Amendment applies only to *use* of a defendant's incriminating statements; the Fifth Amendment does not bar the government from compelling those statements. "[T]he Fifth Amendment does not provide a privilege against the compelled 'disclosure' of self-incriminating materials or information, but only precludes the use of such evidence in a criminal prosecution against the person from whom it was compelled."

9

(*Maldonado*, at p. 1134.) "[T]he Fifth Amendment privilege against self-incrimination does not target the mere compelled *disclosure* of privileged information, but the ultimate *use* of any such disclosure in aid of a criminal prosecution against the person from whom such information was elicited." (*Maldonado*, at p. 1137.)

The California Supreme Court's decision in *Maldonado* relied on the United States Supreme Court's decision in *Chavez v. Martinez* (2003) 538 U.S. 760 (*Chavez*). *Chavez* was a civil action involving qualified immunity in which the issue was whether a police officer who allegedly compelled statements from the plaintiff could be held liable for violating the plaintiff's civil rights. The plaintiff claimed that the police officer had violated the Fifth Amendment. The United States Supreme Court produced a plurality opinion and multiple separate opinions rejecting the plaintiff's theory. Justice Thomas wrote the lead opinion. In a section of his opinion joined by three other justices, Justice Thomas stated that compelled statements "of course may not be used against a defendant at trial, [citation], but it is not until their use in a criminal case that a violation of the Self-Incrimination Clause occurs." (*Chavez*, at p. 767.) "[M]ere coercion does not violate the text of the Self-Incrimination Clause absent use of the compelled statements in a criminal case against the witness." (*Chavez*, at p. 769.) Writing separately, Justice Souter acknowledged that it would be "well outside the core of Fifth Amendment protection" to find that "questioning alone" was a "completed violation" of the Fifth Amendment and declined to extend the Fifth Amendment to such a claim. (*Chavez*, at p. 777.) Thus, five justices held in *Chavez* that the Fifth Amendment is not violated by the extraction of compelled statements.

We reject the Arizona Supreme Court's holding in *Eccles* that a probation condition authorizing extraction of compelled statements itself violates the Fifth Amendment. We are bound by *Maldonado* and *Chavez* (*Auto Equity Sales, Inc. v.*

10

*Superior Court* (1962) 57 Cal.2d 450, 455), and they hold that the mere extraction of compelled statements does not violate the Fifth Amendment.[7] Since the probation condition did not purport to authorize the *use* of any statements against defendant in a criminal proceeding, it did not violate the Fifth Amendment.[8]

Defendant claims that the condition "violates the Fifth Amendment" because the polygraph examiners are authorized to "investigate and resolve" any previously unreported offenses. But until defendant's statements are *used against him in a criminal proceeding*, the Fifth Amendment is not violated. Nothing in the condition authorizes the use in a criminal proceeding of defendant's statements to the polygraph examiner, so the condition does not violate the Fifth Amendment.

The subdivision (b)(3) probation condition does not force defendant to choose between forfeiting his Fifth Amendment rights, on the one hand, or asserting them and suffering the revocation of his probation. This condition does prohibit defendant from *invoking* any right against self-incrimination and thereby sets the price of invocation at the revocation of probation. By doing so, the condition creates the "classic" situation where the penalty exception applies. If the State "asserts that invocation of the

---

[7]    The dissent views our analysis as a rejection of defendant's contention "as unripe." (Dissent, at p. 1.) We do not engage in any ripeness analysis. Our rejection of defendant's facial challenge to the subdivision (b)(3) condition is based on substantive grounds: the condition *itself* does not violate the Fifth Amendment. This conclusion follows not from the claim's being unripe but from the claim's lack of merit.

[8]    In *United States v. Mike* (10th Cir. 2011) 632 F.3d 686 (*Mike*), the Tenth Circuit distinguished *Saechao* and rejected a Fifth Amendment challenge to a probation condition prohibiting contact with children and requiring defendant to tell his probation officer if he had contact with children. The Tenth Circuit held that the Fifth Amendment "is not implicated" where no incriminating statements have yet been made. (*Mike*, at pp. 697-698.) The Tenth Circuit's holding in *Mike* is consistent with the California Supreme Court's reasoning in *Maldonado*.

privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and *inadmissible* in a criminal prosecution." (*Murphy*, *supra*, 465 U.S. at p. 435, italics added.) Because the penalty exception will necessarily apply to any statements that defendant makes under the compulsion of the subdivision (b)(3) probation condition, these statements cannot be used against defendant in a criminal proceeding.[9] Hence, the condition cannot result in any Fifth Amendment violation.

None of the other cases defendant relies on supports his Fifth Amendment challenge to this condition. The issue in *Spielbauer v. County of Santa Clara* (2009) 45 Cal.4th 704 (*Spielbauer*) was whether Spielbauer's refusal to answer his employer's questions could be used as a basis for terminating his County employment. Spielbauer claimed that requiring him to answer these questions would violate his Fifth Amendment rights, despite the fact that he had been told when the questions were posed that his answers would not be used against him in any criminal proceeding. The California Supreme Court rejected his contention. "The constitutional guarantee against compelled self-incrimination protects an individual from being forced to testify against himself or herself in a pending criminal proceeding, but it does more than that. It also privileges a person not to answer official questions in any other proceeding, 'civil or criminal, formal or informal,' where he or she reasonably believes the answers might incriminate him or her in a criminal case. [Citations.] One cannot be forced to choose between forfeiting the privilege, on the one hand, or asserting it and suffering a penalty for doing so on the other." (*Spielbauer*, at p. 714.) However,

---

[9] Defendant seemed to concede at oral argument that he is not opposed to the waiver itself but only to the potential use or derivative use of statements procured by means of the waiver. As the penalty exception will preclude such use, defendant should be fully satisfied by our resolution of this case.

because "the law is clear that incriminating answers coerced from a public employee under threat of dismissal *cannot be used against the employee in a criminal proceeding*," requiring Spielbauer to answer questions did not force him into such a choice and therefore did not violate the Fifth Amendment. (*Spielbauer*, at p. 715.)

*Spielbauer* is not inconsistent with the California Supreme Court's subsequent decision in *Maldonado*. "The state and federal self-incrimination clauses say one cannot be made an involuntary witness against himself, or herself, *in a criminal proceeding*. Thus, they do not prohibit officially compelled admissions of wrongdoing as such. They only forbid the *criminal use* of such statements against the declarant. Constitutionally based prophylactic rules, such as a prior-immunity requirement in some cases, have arisen to protect the core privilege, but the right against self-incrimination is not itself violated until statements obtained by compulsion are *used* in criminal proceedings against the person from whom the statements were obtained."[10] (*Spielbauer*, *supra*, 45 Cal.4th at p. 727.) *Spielbauer* provides no support for defendant's claim that the subdivision (b)(3) condition itself violated the Fifth Amendment.

*United States v. Antelope* (9th Cir. 2005) 395 F.3d 1128 (*Antelope*) is also unhelpful because it too did not uphold a Fifth Amendment challenge to a probation condition. In *Antelope*, the defendant objected on Fifth Amendment grounds to probation conditions requiring him to participate in a sex abuse treatment program and submit to polygraph examinations. He thereafter refused to comply with the polygraph condition and with the treatment program's requirement that he "reveal his full sexual history . . . ." His probation was revoked, and he was incarcerated. (*Antelope*, at pp. 1131-1132.) The Ninth Circuit concluded that the defendant's claim

---

[10] Defendant does not identify any "[c]onstitutionally based prophylactic rules" that might apply here. (*Spielbauer*, *supra*, 45 Cal.4th at p. 727.)

was "ripe" because he had been incarcerated for his refusal to comply with the condition. (*Antelope*, at pp. 1132-1133.) It concluded that revoking the defendant's probation and incarcerating him for invoking his Fifth Amendment rights violated the Fifth Amendment. (*Antelope*, at pp. 1134-1140.) Whether its holding is right or wrong, *Antelope* is not relevant here. Defendant is making a facial challenge to the probation condition; he has not been subjected to any sanction for refusing to comply with it. We do not have before us in this case the issue of whether defendant may have his probation revoked for refusing to comply with this condition.

*United States v. Bahr* (9th Cir. 2013) 730 F.3d 963 (*Bahr*) is equally unhelpful as it too did not uphold a facial challenge to a condition. Bahr had made admissions during a "'full disclosure' polygraph test" required by a sex offender treatment program upon which his supervised release was conditioned for an Oregon rape conviction. (*Bahr*, at p. 965.) Bahr was subsequently convicted of federal child pornography charges, and he sought to suppress the use of his admissions at sentencing in the federal case. (*Ibid.*) The district court denied his suppression motion, but the Ninth Circuit held that the use of his compelled statements against him in the federal case violated the Fifth Amendment. (*Bahr*, at pp. 965-966.) In *Bahr*, unlike here, the challenged statements were used against the defendant in a criminal proceeding, a classic Fifth Amendment situation. Here, no statements have been made, and none have been used against defendant.

The dissent offers no convincing reason that might undermine our analysis. It posits that the subdivision (b)(3) condition violates the Fifth Amendment *because* the condition creates the "'classic penalty situation.'" (Dissent, at p. 6.) In our view, exactly the opposite is true. Because statements made under the compulsion of the subdivision (b)(3) condition will necessarily be subject to the penalty exception, and therefore will not be admissible against defendant in a criminal proceeding, the condition will *never* result in a violation of defendant's Fifth Amendment rights.

14

The dissent asserts that our analysis "ignores" a person's privilege "not to answer questions" in noncriminal proceedings "where the answers might incriminate him." (Dissent, at p. 9.) In *Spielbauer*, the California Supreme Court held that Spielbauer was *not* privileged under the Fifth Amendment to choose "not to answer questions" in a noncriminal proceeding *because* the penalty exception would preclude the use of his answers against him in a criminal proceeding. The same is true here.

The dissent further asserts that our analysis "creates *blanket immunity* for probationers to disclose crimes during their participation in the sex offender treatment program . . . ." (Dissent, at p. 10, italics added.) It does not. As the dissent appears to acknowledge, any compelled disclosures extracted by use of the subdivision (b)(3) condition would be subject to only use and derivative immunity. Probationers would gain no "blanket immunity" by disclosing their criminal activities.

We cannot accept the dissent's suggestion that the Legislature would have preferred that the waiver provision be stricken rather than have the disclosures protected by use and derivative use immunity. (Dissent, at p. 10.) The dissent cites no foundation for its counterintuitive speculation, and we cannot imagine any. The Legislature has explicitly identified the purpose of probation conditions as reformation and rehabilitation of the probationer. (§ 1203.1, subd. (j).) Consistent with this purpose, the Legislature explicitly *included* the waiver provision in the probation conditions that the Legislature itself mandated for sex offenders. (§ 1203.067, subd. (b)(3).) We cannot believe the Legislature would have wished to have stricken the waiver provision it explicitly devised to enhance the reformation and rehabilitation of probationers simply because that provision will not *also* allow probationers' statements to be used against them in criminal proceedings.

"[T]he Legislature is deemed to be aware of existing laws and judicial decisions in effect at the time legislation is enacted and to have enacted and amended statutes '"in the light of such decisions as have a direct bearing upon them."'" (*People v.*

15

*Overstreet* (1986) 42 Cal.3d 891, 897.) Since the Legislature is deemed to have been aware of the United States Supreme Court's 1984 decision in *Murphy* when it enacted subdivision (b)(3)'s waiver provision in 2010, we must presume that the Legislature intended for the penalty exception to apply with respect to statements obtained by means of the waiver provision.

We reject defendant's claim that the subdivision (b)(3) condition itself violates the Fifth Amendment.

## 2. Overbreadth Challenge

Defendant claims that the subdivision (b)(3) condition is unconstitutionally overbroad because it impinges on his Fifth Amendment rights. "[A]dult probationers, in preference to incarceration, validly may consent to limitations upon their constitutional rights . . . ." (*People v. Olguin* (2008) 45 Cal.4th 375, 384.) "A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*In re Sheena K.* (2007) 40 Cal.4th 875, 890 (*Sheena K.*).) Under this doctrine, " ' "a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." ' [Citations.]" (*In re Englebrecht* (1998) 67 Cal.App.4th 486, 497.) " ' A law's overbreadth represents the failure of draftsmen to focus narrowly on tangible harms sought to be avoided, with the result that in some applications the law burdens activity which does not raise a sufficiently high probability of harm to governmental interests to justify the interference.' [Citation.]" ( *Ibid.*)

Defendant claims that the subdivision (b)(3) condition is unconstitutionally overbroad because its limitation on his Fifth Amendment rights is not closely tailored to its purpose. The condition requires defendant to waive his privilege against self-incrimination and undergo polygraph examinations in connection with the sex offender

16

management program. It bars him from exercising any privilege against self-incrimination to avoid answering the polygraph examiner's questions. However, the Fifth Amendment does not prohibit the State from compelling statements. It prohibits the State from using a person's compelled statements against that person in a criminal proceeding. Any statements that defendant makes under the compulsion of this condition will be subject to the penalty exception. As a result, these statements will *not* be permitted to be used against defendant in a criminal proceeding. Consequently, this condition will never result in a violation of defendant's Fifth Amendment rights.

To the extent that this condition results in any restriction on defendant's Fifth Amendment rights, it *is* closely tailored to the purpose of the condition. The Legislature's enactment of section 1203.067 recognized that a grant of probation to a sex offender is a very risky proposition that is appropriate only where those risks can be managed. One of the risks is that the sex offender's full history of sex offenses may not be known when he or she is granted probation. The Legislature could reasonably conclude that a sex offender who has committed additional unreported sex offenses generally poses a significantly greater risk to the public if he or she is not incarcerated. Similarly, the State has a compelling interest in discovering whether the sex offender is committing additional offenses while on probation. By requiring every sex offender granted probation to make full disclosures and to give up any privilege to refuse to answer the polygraph examiner's questions, the State greatly enhances its ability to manage the serious risks posed by sex offenders who remain free in the community. This condition permits the State to discover the full extent of the risks created by the sex offender's freedom so that the State can respond with additional treatment, closer monitoring, and other measures necessary to protect the community. Allowing sex offenders on probation to refuse to answer questions would create an unacceptable danger to the community.

Defendant's reliance on *Brown v. Superior Court* (2002) 101 Cal.App.4th 313 (*Brown*) is misplaced. The defendant in *Brown* was ordered as a condition of probation to undergo polygraph testing as directed by the probation officer without any further identification of the purpose of the polygraph testing. The Court of Appeal found that the condition was unreasonable under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*) because it failed to specify the subject matter for the polygraph examinations. (*Brown*, at p. 321.) Here, on the other hand, the polygraph testing condition was expressly linked to defendant's participation in the sex offender management program.

We reject defendant's overbreadth challenge.

### 3. Reasonableness Challenge

Finally, defendant claims that the subdivision (b)(3) condition is unreasonable because it "essentially requires the probationer to discuss any and all matters during the course of the sex offender management program, including but not limited to past or present crimes committed by the probationer." He maintains that requiring disclosure of "past criminal acts" does not serve any reformative or rehabilitative goal.

"Trial courts have broad discretion to impose such reasonable probation conditions 'as it may determine are fitting and proper to the end that justice may be done . . . and generally and specifically for the reformation and rehabilitation of the probationer . . . .'" (*People v. Chardon* (1999) 77 Cal.App.4th 205, 217; § 1203.1, subd. (j).) "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' [Citation.]" (*Lent*, *supra*, 15 Cal.3d at p. 486.)

The primary purpose of the sex offender management program, which sex offenders like defendant are statutorily required to complete as a condition of probation, is to prevent the probationer from committing sexual offenses in the future.

18

(§ 9000, subd. (d).) The program is "designed to address the multiple psychological and physiological factors found to be associated with sexual offending." (§ 9000, subd. (c).) The trial court could have reasonably concluded that, without the probationer's full disclosure of the circumstances of all of his or her prior offenses, the program would not be able to identify the "psychological and physiological factors" that were "associated with [his or her] sexual offending." The program would then have no hope of providing the treatment necessary to reform and rehabilitate the probationer in order to prevent him or her from repeating this pattern and committing future offenses. Since full disclosure is necessary to identify these factors, and identification of these factors is critical to the success of the treatment program, which is aimed at preventing future sex offenses, the subdivision (b)(3) condition is reasonably related to defendant's future criminality.

## B. The Subdivision (b)(4) Condition

Defendant claims that the subdivision (b)(4) condition violates his constitutional right to privacy, is unconstitutionally overbroad, violates the psychotherapist-patient privilege, and is unreasonable. This condition required defendant to "waive[] . . . any psychotherapist-patient privilege to enable communication between the sex offender management professional and supervising probation officer, pursuant to Section 290.09." (§ 1203.067, subd. (b)(4).) Under section 290.09, "[t]he certified sex offender management professional shall communicate with the offender's probation officer or parole agent on a regular basis, but at least once a month, about the offender's progress in the program and dynamic risk assessment issues, and shall share pertinent information with the certified polygraph examiner as required." (§ 290.09, subd. (c).)

This condition does not violate defendant's constitutional right to privacy. "The psychotherapist-patient privilege has been recognized as an aspect of the

19

patient's constitutional right to privacy.  [Citations.]  It is also well established, however, that the right to privacy is not absolute, but may yield in the furtherance of compelling state interests."  (*People v. Stritzinger* (1983) 34 Cal.3d 505, 511.)  Even where there is "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct constituting a serious invasion of the privacy interest," the constitutional right to privacy is not violated if "the invasion of the privacy interest is justified because it substantially furthers one or more legitimate competing or countervailing privacy or non-privacy interests."  (*In re Christopher M.* (2005) 127 Cal.App.4th 684, 695 (*Christopher M.*), disapproved on a different point in *People v. Gonzales* (2013) 56 Cal.4th 353, 373.)

In *Christopher M.*, the trial court imposed probation conditions requiring the minor to participate in a treatment program and providing that the records of his psychological treatment would be made available to the probation officer and the court upon request.  (*Christopher M.*, *supra*, 127 Cal.App.4th at p. 690.)  The minor claimed that these conditions violated his constitutional right to privacy and were unconstitutionally overbroad.  (*Id.* at p. 691.)  The court held that the invasion of the minor's privacy was justified by the State's legitimate interests.  "[T]he state has a legitimate countervailing interest in (1) protecting the public against Christopher's violent and antisocial conduct, and (2) determining both whether he is fully complying with the numerous conditions of his new grant of probation, and whether treatment is succeeding . . . ."  (*Id.* at p. 695.)

As in *Christopher M.*, the invasion of defendant's privacy is justified by the State's legitimate countervailing interests.  The Legislature's decision to restrict the statutory psychotherapist-patient privilege for sex offenders solely with respect to communications necessary to the success of the sex offender management program is justified by the State's legitimate interest in protecting the public from defendant's

20

sexual misconduct, monitoring his compliance with his probation conditions, and determining whether his treatment is succeeding.

Defendant's claim that the subdivision (b)(4) condition is unconstitutionally overbroad fails for the same reason. A probation condition may limit a constitutional right so long as the condition is closely tailored to its purpose. (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.) Here, the purpose of the condition is to protect the public and monitor defendant's compliance and the success of his treatment. The condition's waiver requirement is limited to "enabl[ing] communication between the sex offender management professional and supervising probation officer" while defendant is participating in the sex offender management program. (§ 1203.067, subd. (b)(4).) As it does not require defendant to waive his psychotherapist-patient privilege outside of this limited context, it is closely tailored to its purpose.

There is no merit to defendant's assertion that the subdivision (b)(4) condition is unreasonable. Protecting the public from defendant's sexual misconduct, monitoring defendant's compliance with his probation conditions, and facilitating the success of his treatment program are all reasonably related to reforming and rehabilitating defendant so as to prevent his future criminality. (*Lent*, *supra*, 15 Cal.3d at p. 486; § 1203.1, subd. (j).)

Defendant also claims that the waiver of his psychotherapist-patient privilege is invalid because the waiver is "coerced." Not so. The Legislature has mandated that sex offenders like defendant not be granted probation unless this condition is imposed. Defendant was free to decline the grant of probation, burdened as it was with this condition, but he chose to accept it. "Probation is not a right, but a privilege. 'If the defendant considers the conditions of probation more harsh than the sentence the court would otherwise impose, he has the right to refuse probation and undergo the sentence. [Citations.]'" (*People v. Bravo* (1987) 43 Cal.3d 600, 608.) There is no coercion.

21

We decline to consider defendant's policy arguments against requiring a waiver of the psychotherapist-patient privilege since the Legislature, which made the policy decision to mandate this condition, is the appropriate body to entertain such arguments. " ' "Criticisms of policy, wisdom or technique inherent in any legislative enactment 'are matters with which the courts have no concern, such arguments being proper ones to address to the legislature for its determination.' " ' " (*Strickland v. Foster* (1985) 165 Cal.App.3d 114, 119.)

We reject defendant's challenges to the subdivision (b)(4) condition.

### III.  Disposition

The order is affirmed.

_____
Mihara, J.

I CONCUR:

_____
Elia, Acting P. J.

*People v. Ignacio Garcia*
H039603

23

**Grover, J. Concurring and Dissenting.**

I concur in the majority opinion regarding defendant's challenge to the probation condition imposed under Penal Code section 1203.067, subdivision (b)(4) compelling a waiver of the psychotherapist-patient privilege. I respectfully disagree, however, with the majority's analysis and conclusions in Sections II.A.1 and II.A.2 regarding the condition imposed under subdivision (b)(3) of that section requiring defendant to waive his Fifth Amendment privilege against self-incrimination. Based on the following reasoning, I find the Fifth Amendment waiver required by subdivision (b)(3) to be invalid on its face.

### I. DEFENDANT'S FIFTH AMENDMENT CHALLENGE IS TIMELY

Penal Code section 1203.067, subdivision (b)(3) requires, as a condition of probation, that defendant waive his privilege against self-incrimination.[1] Defendant argues that this statutory requirement is facially unconstitutional because it creates an "impermissible penalty situation" described in *Murphy v. Minnesota* (1984) 465 U.S. 420 (*Murphy*). Based on *Chavez v. Martinez* (2003) 538 U.S. 760 (*Chavez*) and *Maldonado v. Superior Court* (2012) 53 Cal.4th 1112 (*Maldonado*), the majority concludes that the Fifth Amendment is violated only when a compelled statement is used against a defendant in a criminal proceeding; thus, the majority effectively treats defendant's Fifth Amendment challenge as unripe because defendant has made no disclosure sought to be used against him. I disagree.

---

[1] Penal Code section 1203.067, subdivision (b)(3) (hereafter sometimes referred to as subdivision (b)(3)) requires a "[w]aiver of any privilege of self-incrimination and participation in polygraph examinations, which shall be part of the sex offender management program." I note that subdivision (b)(3) is ambiguous because the phrase "[w]aiver of any privilege against self-incrimination" can be read as applying only to "polygraph examinations" or more broadly to "the sex offender management program." While it is unnecessary to resolve this statutory ambiguity because the provision is unconstitutional under either construction, my opinion refers to the waiver as applied in the broader sense to defendant's participation in the sex offender management program.

1

Defendant facially challenges the waiver requirement because it prevents him from asserting his Fifth Amendment privilege in connection with the sex offender management program mandated as a condition of his probation. The Fifth Amendment does more than permit a defendant to refuse to testify against himself in a criminal trial. (*Murphy*, *supra*, 465 U.S. at p. 426.) It also " 'privileges [a person] not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.' [Citation.]." (*Ibid; Kastigar v. United States* (1972) 406 U.S. 441, 444–445 [the privilege "can be asserted in any proceeding . . . and it protects against any disclosures which the witness reasonably believes could be" incriminating].) The privilege extends to answering questions posed by probation officers (*Murphy*, *supra*, at p. 426) and polygraph examiners (*People v. Miller* (1989) 208 Cal.App.3d 1311, 1315; *Brown v. Superior Court* (2002) 101 Cal.App.4th 313, 321). Defendant asserts that he cannot be required as a condition of probation to waive his right to assert the privilege and remain silent.

Orders granting probation are appealable under Penal Code section 1237, subdivision (b) as post-judgment orders affecting the substantial rights of a defendant. (*In re Bine* (1957) 47 Cal.2d 814, 817.) A defendant who accepts the terms of probation "may seek relief from the restraint of any alleged invalid condition of probation on appeal from the order granting probation[.]" (*In re Bushman* (1970) 1 Cal.3d 767, 776.) Defendant's challenge is therefore properly before this court as a challenge to an invalid probation condition. It would be inconsistent with Penal Code section 1237 to force defendant either to violate his probation terms by disregarding the waiver or to comply with the waiver and forego asserting a right to remain silent before allowing him to challenge the waiver as unlawful. It is also inconsistent with the well-established practice of reviewing probation conditions for constitutional infirmity before any revocation occurs. (*In re Sheena K* (2007) 40 Cal.4th 875.)

*Chavez* and *Maldonado* do not support the view that defendant's Fifth Amendment claim is not actionable. In *Chavez*, a federal civil rights action brought under Title 42 U.S.C section 1983, the plaintiff was questioned by a parole officer without *Miranda* warnings while receiving medical treatment for gunshot wounds following an altercation with police officers. Plaintiff alleged that the emergency room questioning violated both his Fifth and Fourteenth Amendment rights. (*Chavez, supra,* 538 U.S. at p. 765.) The Ninth Circuit upheld the denial of qualified immunity to the parole officer, concluding that the " 'right to be free from coercive interrogation' " was clearly established under both the Fifth and Fourteenth Amendments. (*Id.* at pp. 765–766.) The Supreme Court reversed, concluding that the plaintiff could not allege a Fifth Amendment violation because he "was never prosecuted for the crime, let alone compelled to be a witness against himself in a criminal case." (*Id.* at p. 766.) The Court reasoned that the text of the Fifth Amendment "cannot support the Ninth Circuit's view that the mere use of compulsive questioning, without more, violates the Constitution." (*Id.* at p. 767.)

In *Maldonado*, the criminal defendant asserted a mental-state defense. Pursuant to Penal Code section 1054 (providing for reciprocal discovery), the prosecution obtained a court order requiring the defendant to submit to a mental examination by prosecution-selected experts, and a disagreement arose regarding the disclosure of the examination results to the prosecution. (*Maldonado, supra,* 53 Cal.4th at p. 1118.) Relying in part on *Chavez*'s focus that a " 'core' Fifth Amendment violation is completed, not merely by official extraction of self-incriminatory answers from one who has not waived the privilege, but only if and when those answers *are used in a criminal proceeding* against the person who gave them" (*id.* at p. 1128, citing *Chavez, supra,* pp. 766–773), the California Supreme Court concluded that release of the examination results to the prosecution before the defendant actually presented his defense at trial was not precluded by the Fifth Amendment. (*Maldonado, supra,* at p. 1141.)

I do not read *Chavez* and *Maldonado* as standing for the proposition that a probationer may not challenge probation conditions under the Fifth Amendment until a compelled statement is used against him in a criminal proceeding. While both cases recognize that merely eliciting an incriminating statement does not violate the Fifth Amendment, neither case precludes immediate review of the issue presented here: whether the state can condition probation on waiving the right to remain silent when confronted with potentially incriminating questions.

## II. THE SUBDIVISION (B)(3) WAIVER UNCONSTITUTIONALLY INFRINGES ON THE PRIVILEGE AGAINST SELF-INCRIMINATION

Penal Code section 1203.067, subdivision (b)(3) requires defendant as a condition of probation to waive "any privilege against self-incrimination" while participating in the sex offender management program. As discussed above, the privilege includes more than a defendant's right to remain silent at a criminal proceeding. It also embodies the right to refuse to answer potentially incriminating questions in informal settings, including in the probation context. Indeed, no one disputes that, absent the subdivision (b)(3) waiver, defendant could assert his Fifth Amendment privilege and elect not to provide incriminating information as part of the sex offender management program. Defendant contends that any impingement on this right as a condition of probation is an unlawful penalty under *Murphy*. I agree.

Because the Fifth Amendment speaks of compulsion, as a general rule a person must invoke the privilege by refusing to answer incriminating questions. The privilege is not self-executing and must be claimed. Otherwise, the incriminating answers will be deemed voluntary and not protected by the privilege. (*Murphy*, *supra*, 465 U.S. at p. 427.) But an exception exists "where the assertion of the privilege is penalized so as to 'foreclos[e] a free choice to remain silent, and . . . compe[l] . . . incriminating testimony.' [Citation].") In such a situation, the privilege need not be asserted but instead is considered self-executing because the disclosure is deemed compelled by the threat of

4

penalty. (*Id*. at p. 434.) Under this "penalty exception," if a person incriminates himself under threat of a penalty for the refusal to answer, the statement is deemed compelled and cannot be used against the person in a criminal proceeding. (*Ibid.*) Conversely, if a penalty is imposed on a person for exercising the right to remain silent, courts have struck the penalty as violating the Fifth Amendment. For example, in *Lefkowitz v. Turley* (1973) 414 U.S. 70, after refusing to testify before a grand jury, two contractors were disqualified under state law from entering into contracts with public authorities for five years. The Supreme Court found the law violated the Fifth Amendment because it attached a penalty to an individual's assertion of the right to remain silent.

In *Murphy,* the Supreme Court addressed whether a probationer's incriminating statements to his probation officer were made under threat of penalty, thereby requiring their suppression at a criminal trial. The defendant in *Murphy* admitted to his probation officer that he committed a rape and murder occurring several years before the offense for which he was on probation, and that admission resulted in first degree murder charges. (*Murphy*, *supra*, 465 U.S. at p. 425.) At trial, the defendant challenged the admission of the incriminating statement made to his probation officer. Invoking the penalty exception, the defendant argued unsuccessfully that a probation condition requiring that he be truthful with his probation officer in all matters coerced him to admit the rape and murder to his probation officer. (*Id*. at pp. 434–439.) Although the court concluded that Murphy's statements were not compelled and were therefore voluntary and admissible in his criminal trial, I agree with defendant that the application of *Murphy* to the probation condition in this case demands a different result.

*Murphy* formulated a test in determining whether the condition requiring the probationer to speak truthfully constituted a "threat of punishment for reliance on the privilege." (*Murphy*, *supra*, 465 U.S. at p. 435.) *Murphy* recognized that the state "may require a probationer to appear and discuss matters that affect his probationary status[,]" and that such a requirement, without more, is no different than the state compelling an

5

individual to appear and testify. In both cases, the witness and the probationer are required to answer unless the questions call for incriminating answers. (*Ibid*.) *Murphy* then determined that revocation of probation qualifies as a penalty: "[I]f the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation[.]" (*Ibid*.) In such case, the court explained, the state can insist on answers to incriminating questions "and hence sensibly administer its probation system" provided it eliminates the threat of incrimination. (*Id*. at p. 435, fn. 7.)

With these principles in mind, the court framed its inquiry as whether "Murphy's probation conditions merely required him to appear and give testimony about matters relevant to his probationary status or whether they went further and required him to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent." (*Murphy*, *supra*, 465 U.S. at p. 436.) The court concluded that the condition requiring Murphy to be truthful with his probation officer in all matters did not rise to a threat of revocation. Indeed, the condition "said nothing about his freedom to decline to answer particular questions and certainly *contained no suggestion that his probation was conditional on his waiving his Fifth Amendment privilege* with respect to further criminal prosecution." (*Id*. at p. 437. Emphasis added.) The probation condition did not "attach an impermissible penalty to the exercise of the privilege against self-incrimination" (*ibid*.) because it did not require Murphy to choose between incriminating himself and jeopardizing his probation by remaining silent. In contrast, Penal Code section 1203.067, subdivision (b)(3) requires that the privilege against self-incrimination be waived in order to be granted probation under that section.

Application of the *Murphy* test here compels the conclusion that the challenged waiver is unconstitutional precisely because it does impose an impermissible choice between self-incrimination and conditional liberty. This conclusion is consistent with

6

other jurisdictions' treatment of the penalty exception in the context of probation conditions.

In *State v. Eccles* (1994) 179 Ariz. 226 (*Eccles*), the Arizona Supreme Court was presented with a waiver nearly identical to that required under subdivision (b)(3). The Arizona probation condition required the defendant, as part of a sex offender treatment program, to waive his rights against self-incrimination and answer truthfully any questions posed by treatment program agents including his probation officer and polygraph examiner. (*Eccles*, *supra*, at p. 227.) Applying *Murphy*, *Eccles* held that the condition "plainly took the 'extra impermissible step' by attempting to require defendant to waive his right against self-incrimination under penalty of having his probation revoked." (*Id*. at p. 228, quoting *Murphy*, *supra*, at p. 436.) *Eccles* read *Murphy*'s prohibition against a state revoking probation for a legitimate exercise of the Fifth Amendment privilege as also proscribing a state from imposing a waiver of the privilege as a condition of probation. (*Eccles*, *supra*, at p. 228.)

In *State v. Gaither* (2004) 196 Or. App. 131, the Oregon Court of Appeal also determined that a probationer's statement was involuntary under *Murphy*. The sex-offender probationer in *Gaither* was required to " 'promptly and truthfully answer all reasonable inquiries' of his probation officer," fully disclose his sexual history, and identify all victims of any past sexual misdeeds. (*Id*. at p. 133.) Facing threat of a probation violation for invoking his right to remain silent, the probationer told his probation officer that he had committed a sexual offense against a minor and was charged with the offense. (*Id*. at p. 133.) Suppressing the admission, the Oregon court observed: "That is precisely the situation forbidden by *Murphy* . . . . If defendant had no choice other than to disclose or face revocation of his probation, *Murphy* . . . hold[s] that any subsequent statement was made involuntary." (*Id*. at p. 138.)

The majority notes but dismisses *United States v. Saechao* (2005) 418 F.3d 1073. In that case, the Ninth Circuit Court of Appeals concluded that an Oregon condition

7

requiring a probationer to " 'promptly and truthfully answer' all reasonable inquiries" or face revocation of probation was unconstitutional under *Murphy* because it took the " 'impermissible step' " of requiring the probationer to choose between exercising his right to remain silent or jeopardize his conditional liberty. (*Id*. at p. 1075). Like *Gaither*, *Saechao* upheld the trial court's order suppressing evidence obtained as a result of the probationer's incriminating responses.

The Ninth Circuit addressed another probation penalty situation in *United States v. Antelope* (2005) 395 F.3d 1128 (*Antelope*). The majority dismisses *Antelope* as irrelevant because it was not a facial challenge to a probation condition, as here. But *Antelope* illustrates the type of penalty discussed, although not found to be present, in *Murphy* and the impermissibly coercive effect of such a penalty in this context. In *Antelope*, the probationer refused to complete a sexual history autobiography and participate in a "full disclosure polygraph" as part of a sexual abuse recovery program unless he was granted immunity, even though he desired to continue in treatment. (*Id.* at pp. 1131–1132.) The district court revoked probation and imposed a prison sentence. (*Id*. at p. 1132.)

*Antelope* analyzed the probationer's Fifth Amendment claim under *McKune v. Lile* (2002) 536 U.S. 24 (*McKune*), a then recently decided Supreme Court case addressing a state prison inmate's privilege against self-incrimination in the context of the prison's sex offender treatment program. The treatment program in *McKune* required participants to divulge all prior sexual activities regardless of whether they constituted uncharged criminal offenses. (*Id.* at p. 30.) Refusal to participate in the program would result in transfer to a maximum security housing unit and reduced privileges such as visitation, work opportunities, and television access. Inmate Lile refused and asserted the privilege against self-incrimination. (*Id*. at pp. 30–31.)

*McKune* was a fractured decision, with the plurality and Justice O'Connor agreeing that the alteration in the inmate's prison conditions did not amount to compulsion under the Fifth Amendment. (*McKune*, *supra*, 536 U.S. at p. 29 [plurality];

8

*id.* at pp. 48–49 [O'Connor, J.].)  Although "not all pressure necessarily 'compels' incriminating statements" (*Id.* at p. 49), Justice O'Connor recognized that a penalty involving longer incarceration would not be constitutionally permissible.  (*Id.* at p. 52.)  Based on Justice O'Connor's view, *Antelope* concluded that the probationer's privilege against self-incrimination was violated because he suffered additional incarceration which amounted to a penalty for exercising his right to remain silent.  (*Antelope*, *supra*, 395 F.3d at p. 1138.)  *Antelope* concluded that the case presented the classic penalty situation contemplated in *Murphy*.  (*Id.* at p. 1138, fn. 4.)

The application of *Murphy*'s analysis in *Eccles*, *Gaither*, and *Saecheo*, and *Antelope*'s recognition that *Murphy* continues to set the standard for compulsion in probation penalty cases, lead me to conclude that the waiver required by Penal Code section 1203.067, subdivision (b)(3) violates the Fifth Amendment on its face.  I am not persuaded by the majority's view that those authorities do not apply here to the extent they involve probationers' compelled statements which are sought to be used against them in later prosecutions.  The fact that defendant challenges the subdivision (b)(3) waiver on its face rather than challenging the use of statements resulting from that waiver does not affect the import of *Murphy*.  The denial of probation for refusal to accept the mandated condition attaches an impermissible penalty to the exercise of the Fifth Amendment privilege against self-incrimination.

The majority insists that the required waiver does not violate the Fifth Amendment because "statements made under the compulsion of the subdivision (b)(3) condition will necessarily be subject to the penalty exception, and therefore will not be admissible against defendant in a criminal proceeding." (Maj. Op., p. 12.)  This view ignores that the Fifth Amendment privileges a person not to answer questions posed in *other* proceedings (*Murphy, supra,* 465 U.S. at p. 426) and that the very purpose of the subdivision (b)(3) waiver is to deny defendant the privilege of not answering questions, including those where the answers might incriminate him.  By preserving the waiver requirement and

9

compelling those answers, the majority's reasoning creates blanket immunity for probationers to disclose crimes during their participation in the sex offender treatment program knowing that such disclosures, and their derivatives, cannot be used against them in criminal proceedings. (*Kastigar, supra,* 406 U.S. at p. 462 [evidence derived from compelled testimony cannot be used against a person in a criminal proceeding].) Surely that cannot have been the intent of the Legislature in enacting subdivision (b)(3). With the waiver properly stricken from subdivision (b)(3), participants in the sex offender management program may choose whether to assert their right to remain silent, and issues of whether answers will be compelled, questions reformulated, immunity granted, or probation revoked can be addressed on a question by question and case by case basis.

I recognize that probation is a privilege not a right, and a defendant can refuse probation and accept a sentence if he views the conditions of probation as too harsh. (*People v. Bravo* (1987) 43 Cal.3d 600, 608.) But probation was a privilege long before *Murphy* was decided. (See *Burns v. United States* (1932) 287 U.S. 216, 220 [probation is a matter of favor conferred as a privilege]; *Kirsch v. United States* (8th Cir 1949) 173 F.2d 652, 654 [probation is a matter of grace].) *Murphy*'s reasoning removes Fifth Amendment restrictions from the reach of probation conditions (*Murphy*, *supra*, 465 U.S. at p. 438 ["Our decisions have made clear that the State could not constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege."]).

### III. CONCLUSION

Because I find the waiver mandated by Penal Code section 1203.067, subdivision (b)(3) facially violates the Fifth Amendment, I would strike the words "Waiver of any privilege against self-incrimination and" from the subdivision. With the offending language stricken, the subdivision would pose no Fifth Amendment infirmities. Accordingly, I dissent from Sections II.A.1 and II.A.2 of the majority opinion, and from

10

the disposition to the extent it affirms the "waiver of any privilege against self-incrimination" as part of defendant's probation conditions.


_____

Grover, J.

*People v Garcia*
H039603

11

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court |
| Trial Judge: | Honorable Hector E. Ramon |
| Attorney for Defendant and Appellant: | David D. Martin<br>Under Appointment by the Sixth<br>District Appellate Program |
| Attorneys for Plaintiff and Respondent: | Kamala D. Harris<br>Attorney General of California<br><br>Dane R. Gillette<br>Chief Assistant Attorney General<br><br>Gerald A. Engler<br>Senior Assistant Attorney General<br><br>Seth K. Schalit<br>Supervising Deputy Attorney General<br><br>Lisa Ashley Ott<br>Deputy Attorney General |

*People v Garcia*
H039603